## SMITH v. SHEFFIELD.

No. 3511.   Decided April 11, 1921.   (197 Pac. 605.)

1. WITNESSES—WIFE IS AN INCOMPETENT WITNESS AGAINST HUS-
BAND, SUING FOR ALIENATION OF HER AFFECTIONS.  In a husband's
action for alienation of his wife's affections, it was not error to
exclude the wife's testimony against plaintiff, since she was
incompetent to testify on any subject therein without his con-
sent, in view of Comp. Laws 1917, § 7124, disqualifying either
husband or wife to testify for· or against the other without the
other's consent during the marriage relation, or to be examined
as to any communication made while the relation existed.[1]

2. WITNESSES—IN ACTION FOR ALIENATION OF WIFE'S AFFECTIONS,
WHERE HUSBAND TESTIFIED TO QUARRELING, CROSS-EXAMINATION
TO SHOW WANT OF AFFECTION PROPER.  In an action for aliena-
tion of affections, where plaintiff testified to quarrels with his
wife about four years before, and on cross-examination was
asked whether that was the first time he had ever quarreled
with her, and answered in the negative, it was error to reject a
question as to whether he had not quarreled with her for a num-
ber of years, objected to on the ground of immateriality, since
whether plaintiff lived in peace and harmony with his wife prior
to defendant's appearance on the scene was a material issue.

3. WITNESSES—WHERE PLAINTIFF SUING FOR ALIENATION OF WIFE'S
AFFECTIONS TESTIFIED THAT THEY QUARRELED ABOUT DEFENDANT,
IT WAS PROPER TO· CROSS-EXAMINE ABOUT OTHER QUARRELS.  In a
husband's action for alienation of his wife's affections, where
the record shows that they quarreled about the defendant, and
plaintiff testified that he accused his wife of misconduct with
other men, it was proper to inquire whether they quarreled
about other men prior to the acts charged to defendant, so that
proposed cross-examination of plaintiff as to their former quar-
rels had a direct bearing on plaintiff's direct examination, and
should have been permitted.

Appeal from District Court, First District, Cache County;
*J. D. Call*, Judge.

Action by Lorenzo F. Smith against Robert Sheffield.

---

[1] *In re Van Alstine*, 26 Utah, 193, 72 P. 942.

Verdict and judgment for plaintiff, and the defendant appeals.

REVERSED, and new trial granted.

*L. E. Nelson,* of Logan, for appellant.

*Thatcher & Bowen,* of Logan, for respondent.

WEBER, J.

The plaintiff alleges that he and Florence P. Smith were married in 1893, and ever since have been husband and wife; that about four years ago, while plaintiff was living with his wife, the defendant began associating with her, and knowing plaintiff to be her husband, wrongfully and maliciously contrived to injure plaintiff and to deprive him of the comfort, assistance, and affection of his said wife by means of gifts, arts, blandishments, and inducements, and, by continuously associating himself with her, and by talking disparagingly of plaintiff, won to himself the affections of plaintiff's wife, and wholly alienated and destroyed her affections for plaintiff, in consequence of which acts his wife deserted him on June 1, 1918, and has since then refused to live with him, and that in May, 1918, she instituted suit for divorce. Defendant admits that plaintiff and Florence P. Smith are husband and wife, and denies all other allegations of the complaint. Plaintiff introduced evidence tending to support the allegations of his complaint, and evidence to the contrary was produced by defendant. The jury returned a verdict for $25,000 in favor of plaintiff. Defendant appeals.

Plaintiff's wife was a witness for defendant. She was permitted by the court to testify on nearly all subjects that had been testified to by the various witnesses for plaintiff. The trial judge was exceedingly liberal to defendant in his rulings. When ruling on an objection to a question propounded to Mrs. Smith, he said that if he were going to err it would be on the side of the woman. She was permitted to

answer a number of questions propounded to her by defendant's counsel, and to some of the questions objections were sustained. It is not necessary to specifically refer to these questions, nor to discuss them further than to say that the objection was that the witness was incompetent to testify without the consent of plaintiff, her husband.

Comp. Laws Utah 1917, § 7124, in part reads:

"There are particular relations in which it is the policy of the law to encourage confidence and to preserve it inviolate. Therefore, a person cannot be examined as a witness in the following cases: 1. * * * Nor a wife for or against her husband, without his consent; nor can either during the marriage or afterwards, be, without the consent of the other, examined as to any communication made by one to the other during the marriage; but this exception does not apply to a civil action or proceeding by one against the other."

Appellant argues that to hold plaintiff's wife incompetent as a witness against her husband unless his consent be obtained, extends and enlarges the purposes of the statute as expressly stated by the Legislature, and that the purpose of the statute is that a husband cannot be examined for or against his wife without her consent, nor a wife for or against her husband without his consent, as to any matter or thing which would tend to destroy the confidence growing out of the marriage relation. The statute clearly presents two different situations: First, the disqualification of either husband or wife without the consent of the other to testify at all on any subject for or against the other during the marriage relation; second, neither can, during the marriage or afterwards, be examined by anyone as to any communication made by one to the other while the marriage relation existed. The statute means what it says and is plain, clear, and conclusive. It may be barbaric, and it may, as appellant's counsel suggest, close the mouth of the wife and mother and prevent her from vindicating her honor when assailed in court. The law may be wrong. Possibly it should be liberalized but that cannot be done by judicial construction.

Not a case has been cited by appellant in which the court's decision is based upon a statute the same as that of Utah, and hence the authorities from other states relied upon by

defendant are not applicable. *Sexton* v. *Sexton,* 129 Iowa, 487, 105 N. W. 314, 2 L. R. A. (N. S.) 708, is referred to by counsel as sustaining their position that a wife may testify to acts and declarations by her husband tending to show his affection and loss of it in an action to recover damages for the alienation of his affections from her, notwithstanding the statute provided that neither husband nor wife could be examined as to any communication made by the one to the other while married. In the Sexton Case the wife sued her father-in-law for alienation of her husband's affections, and the question was not as to whether she was incompetent as a witness. The statute of Iowa expressly provides that either husband or wife may testify in a civil action by one of them against a third party for alienating the affections of the other. See section 4606, Iowa Code 1907. The decision in *Millspaugh* v. *Potter,* 62 App. Div. 521, 71 N. Y. Supp. 134, is based upon a statute which merely forbids, the disclosure of confidential communications by either husband or wife during marriage. In the case of *In re Estate of Van Alstine,* 26 Utah, 193, 72 Pac. 942, cited by appellant, the part of the statute now under consideration was not involved. The court held that a divorced wife was not disqualified from testifying in a contest involving the probate of her former husband's will as to his condition when under the influence of liquor during the time she was his wife; the statute being intended to exclude only confidential communications, and not facts patent from observation. Michigan has substantially the same statute as Utah, except that neither husband nor wife is competent to testify in any action or proceeding instituted by the husband or wife in consequence of adultery. In *Perry* v. *Lovejoy,* 49 Mich. 530, 14 N. W. 485, an alienation suit by the husband, a letter from the wife containing indications of affection for her husband was admitted in evidence. The objection that the wife was actually present in court and could testify herself was held to be untenable by the trial court, and in passing upon that ruling the Supreme Court said:

"By the common law the plaintiff's wife was absolutely incompetent. The rule has been so far modified by legislation as to make

her competent in case of his consent, and leaving him perfectly free to give or withhold his consent. No fetter is imposed on the discretion so given. He refused, and the consequence was that she was just as incompetent as she would have been in case the common law had remained unaltered. In point of principle, therefore, the circumstance that she was actually in court and could be made a lawful witness at the plaintiff's own instance was void of influence on the admissibility of the letter."

The Minnesota statute is the same as that of Utah. In *Huot* v. *Wise*, 27 Minn. 68, 6 N. W. 425, it was held that the wife was not a competent witness against her husband; he not consenting to her testifying. The court said:

"The question is simple. Is this a case in which the husband or wife may, without consent, be a witness against the other? Upon this the statute seems conclusive. Gen. St. 1878, c. 73, § 10. ' * * * A husband cannot be examined for or against his wife without her consent, nor a wife for or against her husband without his consent; nor can either, during the marriage or afterwards, be, without the consent of the other, examined as to any communication made by one to the other during the marriage; but this exception does not apply to a civil action or proceeding by one against the other, nor to a criminal action or proceeding for a crime committed by one against the other.' If this statute merely laid down the rule disabling the husband and wife from testifying for or against each other, it might be urged that it was only a statutory adoption of the common-law rule, and that it adopted also the common-law application of the rule, including the exceptions. But it also prescribes the application of, and defines and limits the exceptions to, the rule of disability. This excludes resort to the common law to determine how far the rule shall prevail, and what cases shall be excepted from it. So it is immaterial that the common law did or did not—though we know of no well-considered case, holding that it did—admit the evidence of a wife against her husband, in a case like this. The statute does not."

Washington is another state whose statute upon this subject is identical with that of Utah. *Speck* v. *Gray*, 14 Wash. 589, 45 Pac. 143, was an alienation of affections suit, in which plaintiff obtained judgment. The appellant objected to the action of the trial court in excluding the testimony of the wife of the appellant. The ruling of the trial court was upheld.

In the instant case no error was committed by excluding the testimony of plaintiff's wife. She was incom-

petent to testify on any subject without her husband's
consent.

Appellant insists that the court's restriction of the cross-examination of plaintiff was prejudicially erroneous. On examination in chief the plaintiff testified to quarrels with his wife, and that the quarreling commenced about four years ago; that his wife would be out late of nights, and that constant quarrels arose between him and his wife as a result of her actions. On cross-examination he was asked whether four years ago was the first time he ever quarreled with his wife. He answered in the negative. ''You have quarreled with her for a number of years, have you not?'' was the next question. This was objected to as not material and as not proper cross-examination, and the objection was sustained. The court gave no reason for sustaining the objection. The ruling certainly was not based upon the immateriality of the question. Whether plaintiff lived in peace and harmony with his wife prior to Sheffield's appearance upon the scene was a material issue. If the wife was devoid of affection for her husband, he could suffer no loss of affection. Absence of affection, however, for her husband, would not of itself defeat plaintiff's right to recover damages. It would not justify the defendant's interference in the household life of plaintiff and his wife, but facts tending to prove that no affection existed between plaintiff and his wife and any evidence showing unhappy relations between them prior to the alleged intrigues of appellant would be admissible in mitigation of damages.

It remains to determine whether the question to which the objection was sustained was proper cross-examination. Replying to the argument of appellant that plaintiff having offered himself as a witness and having testified to his relations with his wife in support of the allegations of the complaint, respondent's counsel insist that the direct examination did not open up that field of inquiry; that it was not necessary to prove the existence of affection between himself and his wife; that the law presumes it, and the burden is on defendant to prove the contrary. It is further said that the pre-

vious domestic relations of the parties were not even alluded to in the direct examination, and that it was therefore neither proper nor permissible for defendant to cross-examine plaintiff relative to the harmony, or lack of harmony, between himself and wife prior to the alleged intrusion of appellant into the family circle. The record shows the facts to be that Smith and his wife quarreled about Sheffield, the defendant. Plaintiff testified that he had accused his wife of misconduct with other men. If they quarreled on account of Sheffield, was it not proper to inquire whether they quarreled about other men prior to the acts charged to Sheffield? If they quarreled after Sheffield had made himself obnoxious to plaintiff, was it not a proper subject of inquiry as to whether they had quarreled with each other before that time? Clearly, the proposed cross-examination had a direct relation to what the plaintiff had testified to on direct examination. Respondent had the right to rest upon the presumption of law that affection had existed between himself and his wife prior to the acts of alienation complained of, and to refrain from mentioning the subject in his direct testimony, but when he testified to quarrels and lack of harmony during the years that appellant was on friendly terms with Mrs. Smith, when he testified that his wife had "made it as disagreeable as she could around home," it was not within the discretion of the court to arbitrarily establish a dead line beyond which the defense could not go on cross-examination. We think the court erred in sustaining objections to questions propounded to the plaintiff on cross-examination, and that the defendant was denied a substantial right by the court's rulings.

We have not commented upon the evidence for the reason that the case will probably be tried again. It is therefore neither necessary nor advisable to express an opinion as to whether this palpably excessive verdict should be held to be inoculated with the virus of passion and prejudice.

The judgment is reversed, and a new trial granted, with costs to appellant.

CORFMAN, C. J., and GIDEON, THURMAN, and FRICK, JJ., concur.