Sylvia G. McMULLEN,
Plaintiff–Appellee,

v.

Mary Hyde McMULLEN,
Defendant–Appellant.

Court of Appeals of Tennessee,
Western Section.

June 20, 1989.

Permission to Appeal Denied by
Supreme Court Sept. 5, 1989.

James M. Manire, Manire, Ishee, Bing & Shea, David J. Sneed and Cynthia R. Gallaher, Waring Cox, Memphis, for defendant-appellant.

Asa H. Hoke and Karen N. McCarthy, Asa H. Hoke & Associates, Memphis, for plaintiff-appellee.

HIGHERS, Judge.

This case originated in Circuit Court at Shelby County as an alienation of affection action by the plaintiff, Sylvia G. McMullen, against the defendant, Mary Hyde McMullen, and resulted in a jury verdict in favor of the plaintiff in the amount of $200,000. That verdict was remitted to $150,000, judgment was entered, and this appeal followed.

The plaintiff married Pat McMullen [1] in September 1972, three months after she met him and seven months after the death of his first wife of twenty-five years. In February of 1983, McMullen left the plaintiff and moved into an apartment. In March, the plaintiff filed complaint for divorce. In April, McMullen called a friend for dinner on her birthday, and upon learning that the friend had plans with the defendant, suggested that the three of them dine together, which they did. Over the weeks and months that followed, McMullen and the defendant, having been friends for decades, were often a part of the same social group at dinners, football games and other events. Eventually, their relationship developed to the point that they went out on dates. And in June of 1984, they traveled by ship on a two week cruise to China with married couples who were friends of theirs. A few weeks after this cruise, in August of 1984, McMullen's divorce from the plaintiff became final. Within a week, McMullen asked the defendant to marry him, and in October of 1984, the defendant and McMullen were wed.

The plaintiff filed this action for alienation of affection in January of 1987, and a jury trial was had in June of 1988. At the conclusion of the plaintiff's proof, the defendant moved for a directed verdict but was overruled. At the conclusion of all the proof, the motion was renewed and overruled. After a jury verdict in favor of the plaintiff in the amount of $200,000, the defendant moved for a judgment notwithstanding the verdict, for a new trial, and for remittitur. The trial court declined to grant a J.N.O.V. or a new trial but remitted damages to $150,000 and entered a judgment in accordance therewith. This appeal followed.

The tort of alienation of affection is based upon willful and malicious interference with the marriage relation without justification or excuse. *Donnell v. Donnell*, 220 Tenn. 169, 179–80, 415 S.W.2d 127, 132 (1967). Actions for alienation of affection may lie against defendants other

---

1. For purposes of clarity, the parties will be referred to as "plaintiff" and "defendant" and Mr. McMullen will be referred to simply as "McMullen."

than a spouse's lover, including parents or friends who encourage the spouse to end marital relations. This fact may explain the requirement that the interference be without justification or excuse. But even in those cases where the defendant is alleged to be the spouse's lover, the plaintiff must establish that the defendant acted with malice or improper motives. *Darnell v. McNichols*, 22 Tenn.App. 287, 122 S.W.2d 808, 810 (1938).

In this area of the law, "malice" and "improper motives" mean the same thing. *Barker v. Barker*, 8 Tenn.App. 536 (1928). The plaintiff is entitled to recover only in the event she is able to establish that she lost the affections of McMullen because of the active or aggressive misconduct of the defendant which became the inducing cause of any alleged loss or alienation of affections. If McMullen was the pursuer rather than the pursued, plaintiff's case must fail. *Foster v. Copeland*, 27 Tenn. App. 777, 159 S.W.2d 96, 97 (1941); *Wilson v. Bryant*, 167 Tenn. 107, 67 S.W.2d 133 (1934).

In *Wilson*, the Supreme Court of Tennessee stated that if a plaintiff's spouse was merely bent on the gratification of lust and was not particular in the choice of a guilty partner, the plaintiff's case is not made out. *Wilson*, 67 S.W.2d at 135. There was no allegation or evidence of any sexual involvement in the trial of the present case, but the court in *Wilson* went on to say that the plaintiff's case would fail if for *any reason* it appeared that the plaintiff's spouse was the pursuer rather than the pursued. The lines between pursuer and pursued are difficult to draw. Rare indeed, if it exists at all, is the relationship where pursuits are not in some manner reciprocated rather than simply received. With that in mind, we have carefully reviewed the record in light of defendant's motions for directed verdict.

In reviewing the trial court's denial of the motion for directed verdict, made first at the close of plaintiff's proof, we have looked at all the evidence in the plaintiff's case, taking the strongest legitimate view in favor of the plaintiff and allowing all reasonable inferences therefrom in her favor. *Tennessee Farmers Mutual Insurance Co. v. Hinson*, 651 S.W.2d 235 (Tenn. App.1983). We have discarded all countervailing evidence, *Id.*, and we find that the plaintiff failed to establish her case. We find no material evidence which reasonably supports a verdict for the plaintiff on the grounds of alienation of affection. *See Wharton Transport Corp. v. Bridges*, 24 ALR 4th 1295, 606 S.W.2d 521 (Tenn.1980).

The evidence reveals that in January of 1982, the defendant and McMullen were a little too friendly for the plaintiff's comfort at a New Year's Day party, and that the plaintiff and McMullen separated a short time later. But the record also reflects that they reconciled a few months later and enjoyed a second honeymoon making the New Year's Day incident too remote to allow reasonable inferences as to the incident's impact on McMullen's affections for plaintiff. There is also evidence that during another party, the defendant declined a trip apparently to run an errand with some of the women, preferring instead to converse with the men. There is evidence that some months after the plaintiff filed her divorce action, the defendant asked McMullen to join a group attending a football game for which she had purchased tickets. There is evidence that the China cruise was originally scheduled for 1981 and was to have included the plaintiff, but was postponed due to the death of a member of the original group. The most incriminating, though still not fatal, facts relate to a dinner date in August where the defendant hugged, kissed and cuddled with McMullen while driving to and from dinner and while waiting for the restaurant's valet to bring the car.

With the exception of the New Year's 1982 incident, which preceded the ultimate separation by fifteen months, all evidence pertains to incidents after the separation. Although the plaintiff and McMullen had separated and reconciled in the past, and alienation of affection may lie for a defendant's prevention of reconciliation between the plaintiff and spouse, *Donnell, supra*, the separation in question here differed

from the prior separations and reconciliations of the plaintiff and McMullen in that this time, McMullen had moved into an apartment signing a one year apartment lease and purchasing furniture. Further, the plaintiff filed for divorce and but for the illness of the plaintiff, that divorce would have been tried in the fall of 1983. In light of these facts, an inference that the potential for reconciliation was quashed by the defendant is unreasonable.

In accordance with the opinion above, the verdict and judgment thereon are vacated, the defendant's motion for directed verdict made at the close of plaintiff's proof is granted, and this case is dismissed. Costs on appeal are taxed to the plaintiff-appellee.

TOMLIN, P.J. (W.S.), and CRAWFORD, J., concur.